IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAREEF CHILDS,

                  Plaintiff,

    v.                                          OPINION and ORDER

HANNAH RUDOLPH, HEIDI MELLENBERGER,          22-cv-572-jdp
and CLAIRE HICKEY-WILBUR,

                  Defendants.

---

Plaintiff Shareef Childs, without counsel, alleges that prison staff retaliated against him for filing a lawsuit and inmate grievances, including by calling him a snitch in front of other prisoners. Childs alleges that this led to threats against him that defendants ignored. I granted Childs leave to proceed on claims under the First and Eighth Amendments.

The parties have filed cross-motions for summary judgment. Dkts. 27 and 37. I will deny Childs's motion in its entirety. I will grant defendants' motion in many respects but I will deny it regarding Childs's claims directly against the officer who allegedly retaliated against him by calling him a snitch and who followed that with a false conduct report against him.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Shareef Childs is incarcerated at Stanley Correctional Institution. Defendants all worked at that prison during the relevant events. Hannah Rudolph was a correctional officer. Heidi Mellenberger was a unit manager. Claire Hickey-Wilbur was an institution complaint examiner.

Childs states that defendant Rudolph retaliated against him in several ways because of an earlier lawsuit he filed in this court, *Childs v. Webster*, Case No. 22-cv-256-jdp, about alleged deprivation of meals during Ramadan. Childs named Rudolph as a defendant in a July 1, 2022 amended complaint, but I did not allow Childs to proceed on any claims against Rudolph in my August 16, 2022 order screening that complaint. *See* Dkt. 14 in the '256 case. Rudolph states that she was never notified about this lawsuit by state officials or anyone else. But Childs says that on May 4, 2022, he told Rudolph that she was violating his religious rights and that he was going to add her to his lawsuit.

From June to August 2022, Rudolph took various actions that Childs believes were done to retaliate against him because of the lawsuit: she wrote at least one minor-violation warning on his "face card," conducted searches of his cell, and issued conduct reports against him that he says were fabricated.

Childs disputed a conduct report that Rudolph gave him for possession of intoxicants and damage to property; he was found not guilty of both counts on July 11, 2022. Childs submitted an inmate grievance complaining about what he believed was Rudolph's effort to fabricate the conduct report against him.

Childs says that on July 30, 2022, Rudolph berated him for filing the grievance and repeatedly called him a "snitch" in front of other inmates. Rudolph denies this. Childs soon began being threatened by other inmates because he had been named as a snitch.

Childs submitted a grievance about Rudolph calling him a snitch. About a week later, on August 6, 2022, Rudolph filed another conduct report against Childs, this time for lunging at him and making disrespectful remarks. Childs states that this report was also false. Video showed that Childs did not lunge at Rudolph, but without audio it could not disprove the other

2

charges, so Childs agreed to them in return for a lighter sentence. Childs served 15 days of segregation. Childs followed by filing another grievance about Rudolph's harassment and specifically about her fabricating the conduct report about him lunging at her. He also filed a grievance about inmates threatening him.

Childs states that he "often" complained to defendant Unit Manager Mellenberger about Rudolph's alleged retaliation. More specifically, he states that after Rudolph called him a snitch he went to see Mellenberger and asked to be placed in protective custody; she refused. Mellenberger says that she talked to Rudolph about the incident; Rudolph denied calling Childs a snitch and said that Childs was making false reports against her because of the conduct reports she had given him. Later in August 2022, after Childs had served his segregation sentence, other inmates threatened to beat or stab him. Childs says that he told Mellenberger about the threats but she did not move him or do anything else to protect him.

Defendant Hickey-Wilbur reviewed each of Childs's grievances directly about Rudolph. She recommended dismissing his first grievance, about being singled out for harassment by Rudolph, because Rudolph wasn't the only officer who reprimanded Childs with minor-violation notices or conduct reports; other officers also believed that Childs repeatedly broke prison rules. And there were procedures in place to contest conduct reports.

Hickey-Wilbur recommended dismissing Childs's second grievance, about Rudolph retaliatorily calling him a snitch, because there was no other evidence that Rudolph was aware of Childs's lawsuit or grievances against her. But Hickey-Wilbur forwarded a copy to the security director for potential further investigation about the snitch comment.

Hickey-Wilbur recommended dismissing Childs's third grievance, about Rudolph continuing to retaliate against him and more specifically about the conduct report falsely

stating that he lunged at her. In her recommendation, Hickey-Wilber stated that she had already addressed Childs's accusations of retaliation in previous grievances, and that under DOC regulations Childs could not challenge his disciplinary conviction after he had agreed to the charges.

There is no record of Hickey-Wilbur responding to Childs's fourth grievance, about being threatened by other inmates. It was marked received, so I will infer that Hickey-Wilbur received it. Dkt. 31-12.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

I granted Childs leave to proceed on First Amendment retaliation claims against all of the defendants regarding a series of retaliatory actions by Rudolph, and on Eighth Amendment claims against all of the defendants for the harm faced by Childs after Rudolph called him a snitch.

Both sides move for summary judgment. Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For each motion, I must construe the facts and draw all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

### A.  Retaliation claims

Childs alleges that defendant Rudolph retaliated against him by subjecting him to extra cell searches, issuing him warnings for minor infractions, issuing him conduct reports, and calling him a snitch for complaining about her.

To establish a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendant took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in the defendant's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Rudolph's alleged retaliatory actions took place from June to August 2022. Childs states that Rudolph retaliated against him in large part because of his earlier filed '256 lawsuit. Participating in a lawsuit challenging prison conditions is protected activity. *See Bridges*, 557 F.3d at 551–52.

Rudolph contends that she wasn't aware of that lawsuit during the events in this case. Childs didn't name Rudolph as a defendant in the '256 case until a July 2022 amended complaint, and it is undisputed that she was never notified by prison staff about the '256 lawsuit because I dismissed all claims against her in screening the amended complaint. Rudolph could not have retaliated against Childs for something she wasn't aware of.

But Childs disputes Rudolph on this point, stating that he told her in early May 2022 that he was going to add Rudolph to a lawsuit. For purposes of defendants' motion for summary judgment (although not Childs's own motion for summary judgment), I must credit Childs's account that he warned Rudolph that he was going to add her to his lawsuit.

Nonetheless, Childs's version of the facts is not enough to stave off summary judgment in defendants' favor for many of his retaliation claims. Defendants contend that they are entitled to qualified immunity on all of Childs's claims for damages. I agree that qualified immunity applies to Childs's retaliation claims based on him *warning* Rudolph about a future lawsuit.

Under the doctrine of qualified immunity, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Law is "clearly established" only if it is found in Supreme Court precedent, controlling circuit authority, or "a consensus of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Childs bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). He fails in that burden because he does not cite any authority—and I am unaware of any—clearly establishing that the *threat* of filing a lawsuit or grievance is First Amendment-protect activity. To the contrary, courts of this circuit have suggested that it is not protected activity. *Reed v. Bowen*, 769 F. App'x 365, 370 (7th Cir. 2019) ("We have not ruled that threatening to file a lawsuit is protected activity."); *Davenport v. Szczepanski*, 704 F. App'x 602, 603 (7th Cir. 2017) ("merely threatening to file a grievance against someone is not protected

activity") (citing *Bridges*, 557 F.3d at 554 ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance" (emphasis in original))). So Childs cannot succeed on any retaliation claim triggered by his May 2022 warning to Rudolph. I will deny Childs's motion for summary judgment and grant defendants' motion for summary judgment on all of the retaliation claims against Rudolph based on Childs's warning. For similar reasons I will deny Childs's motion for summary judgment and grant defendants' motion for summary judgment on Childs's claims against defendants Mellenberger and Hickey-Wilbur for failing to intervene to stop that set of Rudolph's alleged retaliatory actions.

But not all of Rudolph's alleged retaliatory actions stem from Rudolph learning about Childs's '256 case. That still leaves (1) a July 30, 2022 incident in which Childs states that Rudolph called him a snitch in the presence of other inmates, in retaliation for him filing an inmate grievance about a previously dismissed conduct report that Rudolph made against him; and (2) an August 6, 2022 incident in which Childs states that Rudolph fabricated a conduct report against him for being disrespectful and lunging at her.

I'll start with the July 30 incident. Childs states that he went to the officers' station, in view and earshot of other inmates, and attempted to sign up for a phone call. Rudolph "confronted" Childs and asked him, "why did you write an inmate complaint on me and you beat the ticket?" Dkt. 29, ¶ 15. When Childs answered that Rudolph had been harassing him, Rudolph repeatedly called Childs a snitch until he walked away. Childs then started receiving threats from other inmates, leading him to receive threats from other inmates and fear for his safety, although he was never actually attacked.

Rudolph denies calling Childs a snitch, which is reason enough to deny Childs's own motion for summary judgment on this claim. But I must credit Childs's account for purposes

of defendants' summary judgment motion (and Childs bolsters his account with a declaration of another inmate perhaps misremembering the date of the incident but otherwise supporting Childs's account, Dkt. 30). Childs has evidence to support the first and third elements of the retaliation standard: he asserts in a declaration that Rudolph retaliated against him because of his grievance against her regarding an allegedly false conduct report. As a general rule, inmate grievances are protected activities. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). A jury could infer from the context that the grievance was a motivating factor in Rudolph's decision to issue the conduct report. For the second element, I conclude that the threats that Childs received from other inmates could deter a person of "ordinary firmness" from filing further grievances. The evidence shows that this didn't actually stop Childs from filing grievances, but the court applies an objective test, not a subjective test, to determine whether the alleged retaliatory actions would deter someone from engaging in future First Amendment protected activity. *See, e.g.*, *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

Because disputed issues of material fact could lead a reasonable jury to rule in either party's favor, I will deny both cross-motions for summary judgment on this portion of Childs's retaliation claim against Rudolph.

The second remaining incident took place about a week later, after Childs had submitted an inmate grievance about Rudolph calling him a snitch. On August 6, 2022, Rudolph filed a conduct report that Childs says was fabricated. The conduct report states that after lunch, Childs loitered in the day room. When Rudolph asked Childs to go back to his cell, Childs responded by yelling "How about you worry about your fucking self and not worry about me for once?" Dkt. 42-6, at 1. Childs began walking to his cell, lunged at Rudolph, and then stared at her while walking backward to his cell. Rudolph charged Childs with threats,

disrespect, disruptive conduct, and obeying orders. Childs did not admit guilt but he did not contest the report and he waived his right to a contested hearing. Childs was found not guilty on the threats charge but guilty on the other charges, receiving a disposition of 30 days of segregation and serving 15 days.

Childs states that Rudolph fabricated the conduct report: he didn't lunge at Rudolph, say the quote attributed to him or otherwise disrespect Rudolph. Childs adds that the hearing officer dismissed the threats charge because video of the incident showed that Childs did not lunge at her, but that there wasn't accompanying audio so he couldn't disprove Rudolph's other allegations. He states that he waived a contested hearing because he was assured that he'd receive only 15 days of segregation by doing so.

If a jury believed Rudolph over Childs, Childs's retaliation claim would fail because a plaintiff cannot maintain a retaliation claim for a conduct report given for legitimate reasons. *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015). So I will deny Childs's motion for summary judgment on this claim. But if a jury believed Childs's version of events, it could conclude that Rudolph retaliated against Childs by fabricating a conduct report. Suspicious timing alone is rarely sufficient to establish a genuine issue of material fact for trial over a party's retaliatory motive. *See, e.g., Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). But here, in addition to Rudolph having issued an allegedly false conduct report only days after Childs filed a grievance against her, these events also directly follow the incident about Rudolph calling Childs a snitch, itself an indication that Rudolph held retaliatory animus against him for filing grievances. So I conclude that Childs has evidence to support the first and third elements for a retaliation claim. He also has evidence on the second element by showing that he was subjected to 15 days of segregation (with the threat of more if

he didn't waive a contested hearing). *See, e.g., Zach v. Lewis*, No. 13-cv-849-jdp, 2017 WL 280825, at *3 (W.D. Wis. Jan. 20, 2017) ("Segregation is not a walk in the park. Given the emerging research on the psychological effects of the isolation commonplace in segregation settings, I conclude that 12 days of segregation and reduced privileges could deter a person of ordinary firmness from filing grievances in the future."). So I will deny defendants' motion for summary judgment on this claim against Rudolph.

Childs also brings claims against defendants Mellenberger and Hickey-Wilbur for failing to stop these instances of Rudolph's retaliation. But they were a step removed from the direct retaliatory actions; in screening Childs's complaint, I warned him that he "will have to show that defendants believed that Rudolph was violating his constitutional rights. It will not be enough to show that he did not commit a particular offense, or that defendants were negligent in reviewing his complaints." Dkt. 6, at 3 (citing *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (Supervisors could be personally involved in a constitutional deprivation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Childs does not make this showing for either Mellenberger or Hickey-Wilbur. Mellenberger talked to both Childs and Rudolph about the alleged retaliation and the only reasonable inference is that she believed Rudolph, based in part of the fact that it wasn't unusual for other officers to punish Childs for rules infractions. Her failure to take further action against Rudolph is not enough to suggest that she though that Rudolph was indeed retaliating against Childs and that she condoned it.

Hickey-Wilbur reviewed each of Childs's grievances directly about Rudolph, and although she did not rule in Childs's favor on any of them, she did not turn a blind eye to

Rudolph's alleged retaliation either. She concluded that Rudolph wasn't retaliating against him. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). And she did refer the allegation about Rudolph calling Childs a snitch to the security director for further investigation.

Based on defendants' actions no reasonable jury could conclude that Mellenberger or Hickey-Wilbur believed that Rudolph was retaliating against Childs and turned a blind eye to it. So I will deny Childs's motion for summary judgment and grant defendants' motion for summary judgment on the remaining retaliation claims against Mellenberger and Hickey-Wilbur.

## B. Eighth Amendment claims

Childs also brings individual-capacity Eighth Amendment claims for damages against all of the defendants and a claim for injunctive relief regarding the threat of harm he faced from other inmates after Rudolph repeatedly called him a snitch.

The Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (standard is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate"). Here, Childs alleges that Rudolph did more than just disregard a risk of harm—she consciously created the risk by

11

repeatedly calling him a snitch in front of other inmates. *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("[I]t's common knowledge that snitches face unique risks in prison.").

There is a question whether Childs has suffered harm that could support an Eighth Amendment claim for damages. It is undisputed that Childs was only threatened by other prisoners; ultimately he was never attacked by any of the inmates who threatened him. Childs states that he suffered emotional harm, which he can't receive damages for either because the Prison Litigation Reform Act bars recovery for emotional harm without a showing of physical injury. *See* 42 U.S.C. § 1997e(e); *Thomas v. Illinois*, 697 F.3d 612, 614–15 (7th Cir. 2012).

Generally, "[p]rison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights, and therefore are subject to those remedies that are not barred by section 1997e(e)": injunctive relief, and nominal and punitive damages. *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). But the Court of Appeals for the Seventh Circuit has limited the availability of even nominal and punitive damages for cases in which a prisoner claims only psychological injuries from the fear of being attacked by other inmates. *Babcock v. White*, 102 F.3d 270, 272 (7th Cir. 1996) ("it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

In *Babcock*, the Court of Appeals distinguished between claims in which a prisoner alleges a mere "failure to prevent exposure to risk of harm," which does not state an Eighth Amendment claim, and claims in which a prisoner alleges that a officer intentionally inflicts psychological torture, which can state an Eighth Amendment claim even without the prisoner suffering physical harm. *Id.* at 272–73 (using the example of an officer "placing a revolver inside an inmate's mouth" as the type of "malicious and sadistic behavior" that would always violate

12

the Eighth Amendment). The Court of Appeals later concluded that an inmate could seek nominal and punitive damages against an officer for inciting other prisoners to threaten him. *Turner v. Pollard*, 564 F. App'x 234, 238–39 (7th Cir. 2014) (reversing dismissal of claim that official "urged inmates to attack him," even though plaintiff was not physically harmed). Other courts have held similarly. *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) (defendant "was on fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates"; *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate.").

Childs's Eighth Amendment claims against the various defendants hinge on this distinction. Childs contends that Rudolph intentionally and repeatedly called him a snitch within earshot of other inmates. It's reasonable to infer that any prison official making such statements would understand the potential jeopardy and psychological turmoil that might result. Childs's claim against Rudolph is essentially the same as the facts in *Turner*, which the Court of Appeals allowed to proceed. On the other hand, Childs's claims against Mellenberger and Hickey-Wilbur involve those defendants' later failures to address Childs's safety fears by taking action to protect him, precisely the types of claims that the Court of Appeals rejected in *Babcock* as mere "failure[s] to prevent exposure to risk of harm." So I will deny Childs's motion for summary judgment and grant defendants' motion for summary judgment on Childs's Eighth Amendment claims for damages against Mellenberger and Hickey-Wilbur.

As for Childs's claim against Rudolph, defendants argue that they are entitled to summary judgment anyway because the evidence shows that Childs wasn't really at risk of harm and he didn't actually fear an attack. They state that "Childs has produced no evidence

to show that he was in imminent risk of harm or living in fear from these alleged threats." Dkt. 38, at 22. Citing Childs's deposition, they state that "Childs continued to engage in normal activities such as going to the rec yard and courtyard and walking the track," and that he waited to talk to Psychological Unit staff about his fears because he thought the threats were going to "'blow by.'" *Id.* (citing and quoting Dkt. 41, at 46 and 52). This mischaracterizes Childs's deposition testimony: Childs states that he repeatedly received threats from other inmates when he was in common areas, and he stated that he thought the threats might "blow by" but that "it just kept . . . it just never—it never cleared." Dkt. 41, at 52. Childs described the threats in more detail:

> They was saying what they were going to do to me for being the snitch. They—they found out I was a snitch, and, you know, they said they was going to beat me. You know, it was—it was just—it was different threats. You know, some guys said they was going to jump me. You know, I heard that they was going to catch me and stab me. You know, I—I heard, you know, threats, you know.

*Id.* at 47. Childs states that he sent requests to the Psychological Services Unit to treat his mental state and that he also requested protective custody. At trial there may be questions about the extent of the danger Childs faced or questions about his credibility. And the parties continue to dispute whether Rudolph called him a snitch in the first place. Because a reasonable jury could find in either party's favor on the Eighth Amendment damages claim against Rudolph, I will deny both sides' motions for summary judgment on this claim.

CONCLUSION

This case will proceed to trial on the following claims:

- First Amendment and Eighth Amendment claims against Rudolph for calling Childs a snitch after he filed a grievance against her.

14

- A First Amendment claim against Rudolph for issuing Childs a false conduct report for filing grievances against her.

I also granted Childs leave to proceed on an Eighth Amendment claim for injunctive relief, with Mellenberger named as the defendant in her official capacity. To avoid confusion at trial, and given that the Wisconsin Department of Justice is representing all of the defendants in the case, I will dismiss Mellenberger and Hickey-Wilbur and we will proceed with only Rudolph in the caption. Should the jury find in favor of Childs on his underlying damages claims, I'll consider whether it would be appropriate to re-add Mellenberger or a different DOC official to the caption to address further proceedings on injunctive relief.

To help Childs prepare for trial, I will shortly issue a separate trial preparation order that provides detailed information about how trial works and how Childs should prepare. Childs should review the trial preparation order carefully and notify defendants' counsel or the court if he has specific questions about preparing for trial.

ORDER

IT IS ORDERED that:

1. Plaintiff Shareef Childs's motion for summary judgment, Dkt. 27, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 37, is GRANTED in part as described in the opinion above.

3. Defendants Mellenberger and Hickey-Wilbur are DISMISSED from the case.

Entered February 15, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15